NOT FOR PUBLICATION

FILED

APR - 1 2010

KT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re

GATEWAY ACADEMY CHARTER SCHOOL

    Debtor.
_____/

FRESNO COUNTY SUPERINTENDENT
OF SCHOOLS aka FRESNO COUNTY
OFFICE OF EDUCATION

    Plaintiff,

  vs.

JAMES E. SALVEN, TRUSTEE FOR
GATEWAY ACADEMY CHARTER SCHOOL,
et al.

    Defendant.
_____/

AND RELATED ACTIONS
_____/

Case No. 07-12320-A-7

Adv. No. 08-1232

DC No. AGO-2

**MEMORANDUM DECISION**

A hearing on the Joint Motion for Summary Judgment (the "Joint Motion") filed by the Controller of the State of California and the California Department of Education (the "State Agencies") was held December 9, 2009. Following the hearing, the court took the matter under submission.

This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A).

Gateway Academy Charter School ("Gateway") filed a chapter 7 bankruptcy petition on

July 31, 2007. James E. Salven (the "Trustee") was named as trustee. On December 2, 2007, the trustee sent to the Fresno County Superintendent of Schools (the "Superintendent") a letter demanding that certain funds held by the Superintendent by turned over to the Trustee.

On October 14, 2008, the Superintendent filed a Complaint in Interpleader, asserting that the State Agencies and the Trustee had competing claims for these funds. On November 14, 2008, the Trustee filed a counterclaim, asserting a right to the payments held by the Superintendent. On December 4, 2008, the Department of Education filed a counterclaim asserting a right to the money and requesting that the money be awarded to the State Controller. On December 31, 2008, the State Controller filed a counterclaim asserting his right to the money. In this motion, the State Agencies seek summary judgment on the interpleader and the counterclaims.

The relevant underlying facts are not in dispute. The State Agencies have filed a Separate Statement of Undisputed Facts in support of their Joint Motion. Of the 45 facts the State Agencies say are undisputed, the Trustee admits all but Number 16, Number 21, Number 27, Number 32, Number 34, and Number 38. Facts Numbers 1 through 15, 17 through 20, 22 through 26, 28 through 31, 33, 35 through 37, and 39 through 45 are established as facts for the purposes of this litigation. See Federal Rule of Civil Procedure 56(d)(1), made applicable by Federal Rule of Bankruptcy Procedure 7056. As to the other facts, either the dispute between the parties is minor and not relevant for the purposes of this Joint Motion, or the dispute goes to the ultimate issue to be decided by this Joint Motion.

Disputed Fact Number 16 is not particularly relevant. The parties agree that a jury found the defendant guilty of something. The Trustee's response is more specific aboaut exactly what the verdict said.

Similarly, Fact Number 21 states "State lottery funding for Gateway was provided for fiscal year 2001-2002." The Trustee's dispute about this fact consists of the Trustee's assertion that the funding was not paid until 2002. The Trustee's view is supported by the declaration of Richard A. Martin in support of the Joint Motion. In any event, there is no real dispute about when the funds were paid, as set forth in Fact Number 22.

In Fact Number 32, the moving parties say "Thus, Gateway was not entitled to the $668,537 in advance apportionment payments, including the January 2002 payment being held by Superintendent." The Trustee disagrees, saying that Gateway was entitled to receive funds for its operation through January 16, 2002. This is an issue for ultimate determination rather than an issue of disputed fact that would preclude the court from ruling on the Joint Motion.

Disputed Fact Number 34 says "The Superintendent held $29,377, plus accrued interest, of the January 2002 advance apportionment payment." The Trustee disputes this, saying "Salven is uncertain as to the applicability of the amounts stated because it does not match up with the supporting declarations or exhibits." However, this number matches up exactly with Paragraph 8 of the Martin Declaration, showing that after deduction of loan payments, the Superintendent held $29,377. Therefore, there is no real dispute as to Fact Number 34, and it is established as a fact for the purposes of this Joint Motion.

Fact Number 38 says "The 40.01 units of ADA equaled $160,885 in overpayments." According to the Trustee, Gateway was not overpaid. Again, this is an ultimate issue for determination by this court and not a disputed fact.

As there are no disputed facts relevant to the purposes of this Joint Motion, the evidentiary objections are similarly irrelevant. The Trustee has objected to Paragraph 7 of Page 2 of the Richard Martin Declaration on the grounds that it lacks foundation and is hearsay. The objection of the Trustee to the Declaration is overruled. The statement is not hearsay.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c) made applicable by Federal Rule of Bankruptcy Procedure 7056. Here, as set forth above, there is no genuine issue as to any material fact. The only issues are as to the legal conclusions to be drawn from those facts.

Background.

In 1996, Heritage Development Corporation, a California Nonprofit Public Benefit Corporation, was established, and thereafter established Gateway as a charter school. The Fresno Unified School District approved Gateway's charter petition in 1998, and the State Board of

Education granted Gateway its charter number in 1999, enabling it to become eligible for funding from the State of California. Gateway began operating in September 2000, and by December 2001 had fourteen school sites throughout California.

Sometime thereafter, allegations arose that Gateway was engaged in activity that was improper for a charter school, and there were also allegations of serious financial mismanagement.

In September 2001, the Fresno Unified School District began an investigation into Gateway's operations and issued a report of its findings. The report found that Gateway was violating its charter, engaged in financial mismanagement, and had failed to comply with various requirements of California law. The School District further found that Gateway had wrongly claimed attendance and state funding for absent and ineligible students. The report recommended that the Fresno Unified School District Board of Education revoke Gateway's charter to operate.

Based on the report's findings, the Fresno Unified School District Board of Education revoked Gateway's charter effective January 16, 2002. Gateway did not appeal or otherwise challenge this revocation.

The allegations against Gateway also prompted a criminal investigation by the Attorney General of California. In January 2006, the Attorney General issued indictments against three Gateway officers and directors, and each of them were found guilty of either misdemeanor or felony charges.

As a public charter school, Gateway could receive funding from the State of California. Such funding was authorized by the California Constitution. Specifically, Gateway received funding generated by the California Lottery, as well as funding approved by the California Department of Education. Both the lottery funding and the Department of Education funding were based upon Gateway's reported average daily attendance ("ADA"). The funding was pursuant to specific statutes in California. See, Cal. Gov. Code § 8880.5 Cal. Edu. Code § § 14040, 14700, and 47638.

The way this worked is that Gateway would report its ADA to the Fresno Unified School

4

District and the Superintendent of Schools. The Fresno Superintendent would report the ADA to the Department of Education. The State Controller would then send the state funding to the Superintendent, who would then distribute it to Gateway. See Cal. Edu. Code § 14041; Cal. Edu. Code § 47651(a)(1).

The problem here arose because of the interplay between the timing of the revocation of Gateway's charter and the manner in which Gateway was receiving funds from the state. Gateway's charter was revoked on January 16, 2002, in mid-year of its second year of operation. On the same day that the charter was revoked, Gateway received its last advance apportionment in the amount of $52,351.32. That check included $52,050.09 from the 2001-2002 first quarter lottery apportionment.

However, there was a delay in the state's ability to stop electronic transfers. For this reason, the California Department of Education forwarded to the Fresno County School District an advanced apportionment in categorical funding to Gateway after the revocation date. This transfer of $92,804 was posted on the County School Service Fund on January 29, 2002.

Additionally, Gateway obtained a "Charter Revolving Loan" from the California Department of Education in the amount of $250,000. Loan repayments are automatically deducted from a charter school's advance apportionments by the California Department of Education. The Charter receives only the net amount remaining in its advance apportionments until the loan is fully repaid. That is what happened with the January 29, 2002 advanced apportionment payment, and the loan repayments therefrom.[1]

Prior to Gateway's filing bankruptcy, the California Department of Education offset for revolving loan payments for the 2001-2002 school year from this advance apportionment. Thus,

---

[1] The State Agencies do not agree that it was appropriate for the loan repayment to be deducted from the $92,804 of advanced apportionments. According to Susan Lange, the Deputy Superintendent in charge of the Finance, Technology and Administration Branch of the California Department of Education, this deduction was inappropriate. In any event, there is no disagreement that Gateway owes the State Agencies for loan repayments in an amount greater than the amount held in this interpleader action.

from the amount of $92,804 was deducted $15,856.25 on each of February 28, March 28, April 26, and May 29, 2002. There was also a $2 deduction on February 28, 2002, due to a rounding correction, which with the loan payments totaled $63,427. Therefore, prior to the bankruptcy case, the Fresno County School District held $92,804 less $63,427, for a total of $29,377 for Gateway.

Additionally, after January 29, 2002, Fresno County received funds for Gateway based on lottery apportionments, interest on lottery apportionments, interest on the remaining money, and interest on interest. On April 5, 2002, a "2001-02 Second Quarter Lottery" payment was made of $7,692.67; on July 3, 2002, a Third Quarter Lottery payment in the amount of $14,448.84 was made; and on October 10, 2002, a Fourth Quarter Lottery payment in the amount of $8,298.09 was paid. Adding up the amount left from the January 29th advance apportionment after the loans were paid to the lottery apportionments and adding interest, we arrive at the amount described in the Interpleader of $74,297.58 plus additional interest for a total of $75,269.60. That is the amount at issue in this adversary proceeding.

The State Agencies assert that this money belongs to the State as Gateway had no entitlement to it after its charter was revoked. The Trustee asserts that the State Agencies are merely unsecured creditors in the bankruptcy case and that the money belongs to the bankruptcy estate.

Both the state lottery funding and the funding from the Department of Education were based on Gateway's reported ADA. Gateway received its state funding through the Fresno County Superintendent of Schools. The State Controller would send state funding to the Superintendent, who would then distribute it to Gateway.

California schools, including charter schools, can receive two types of funding. The first is funding authorized by the California Department of Education. This funding is determined four times for each fiscal year. There is an advance apportionment which is based on a school's prior year's state funding and is certified in July and is paid from July to February of the following year. There is a first principal apportionment ("P-1") that is certified February 20th and corresponds to the P-1 ADA attendance report. Then there is a second principal apportionment

("P-2") that is certified by July 2nd and corresponds to the P-2 ADA attendance report. Finally, there is an annual recalculation of the apportionment based on the P-2 ADA. The advance apportionment constitutes monthly payments and is credited against the first principal apportionment.

California schools also receive funding generated from the California Lottery. Lottery payments are calculated based on a school's prior year ADA.

Gateway's ADA attendance reports for calculating its state funding were completed by Gateway, signed off by the Fresno Unified School District, and signed off by and submitted to the California Department of Education by the Fresno County Office of Education. Gateway's ADA funding was sent in the form of a warrant drawn by the State Controller in favor of the Superintendent of Schools of Fresno County Office of Education and deposited with the Fresno County Office of Education for Gateway's use.

After Gateway's charter was revoked effective January 16, 2002, Gateway was no longer eligible to receive any further state funding.

Charter schools are governed by legislative acts. They are part of California's public school system. See, Wilson v. State Board of Education, et al., 75 Cal. App. 4th 1125, 1135-37 (1st Dist. 1999). ". . . [I]t is apparent that charter schools are part of California's single, statewide public school system."

The Act establishing charter schools "assures that charter schools will receive funding comparable to other public schools. [citation omitted]" Id. at 1138.

Charter schools are part of the public school system, and the legislature has "specifically declared that charter schools are under the exclusive control of the Offices of the Public Schools." Id. at 1139 (internal quotations and citations omitted).

A charter school is required to operate under the terms of its charter. Wells v. One2One Learning Foundation, 39 Cal. 4th 1164, 1186 (2006).

Both parties agree that California law determines who is entitled to the interpled funds. Butner v. United States, 440 U.S. 48, 55 (1979). Under California Government Code § 8880.5(m), state lottery funding is to be used exclusively for the education of pupils and

students. Under California Education Code § 47612, a charter school is deemed a public school for the purposes of appropriating public money. Once Gateway's charter was revoked, it ceased being a public school and had no legal entitlement to any state funding under California law. Cal. Const., Article IX, ¶ 6. The only basis for funding a charter school is that a charter school is part of the public school system.

Gateway's charter was revoked January 16, 2002. All the ADA payments in question were made after the revocation date. The lottery payments were received after the revocation date. The advance apportionment payment was made after the revocation date.

The Trustee asserts that all these payments were made for ADA periods prior to the revocation date. The Trustee further asserts that once the payment was made to the Fresno Office of Education, it became the property of Gateway and now of the Trustee.

The court concludes that the State Agencies have the stronger argument. First, although the ADA apportionment payments were calculated on attendance from prior periods, they were made for the purpose of school operations at the time they were made. Thus, they were made for the purpose of school operations from 2002 forward. The funds had not yet been paid by the County Office of Education to Gateway. Because Gateway's charter had been revoked, and because California law requires all of those funds to be used only for public education purposes, those funds do not belong to Gateway.

The school's current ADA payment is calculated based on P-1 and P-2 attendance reports that a school submits in February (the "P-1") and July (the "P-2") each year. Cal. Edu. Code §§ 41332 (first principal apportionment calculated on or before February 20th) and 41335 (second principal apportionment calculated on or before July 2nd). Gateway's advance apportionment payments were in advance on the February 2002 calculation. Since Gateway's charter was terminated January 16, 2002, Gateway could not file either the P-1 or the P-2 reports. The Department of Education never certified Gateway to receive any 2001-2002 ADA payments. Thus, Gateway was not entitled to the amount it received in advance apportionment payments, including the January 2002 payment in interpleader. The payment had not yet been made to Gateway when the bankruptcy case was filed. It was still held by the Fresno County Office of

Education.

For the foregoing reasons, the motion for summary judgment by the State Agencies will be granted. Counsel for the State Agencies shall present a form of order consistent herewith.

DATED: 4/1/10

_____
WHITNEY RIMEL
United States Bankruptcy Judge

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF FRESNO       )

      I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2500 Tulare Street, Suite 2501, Fresno, California, 93721. On April __/__, 2010, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Hiren Patel, Esq.
Deputy Attorney General
1300 I Street, Suite 125
P. O. Box 944255
Sacramento, CA 94244-2550

Peter J. Stubbs, Esq.
Deputy General Counsel
California Department of Education
1430 "N" Street, Room 5319
Sacramento, CA 95814

Beth Maxwell Stratton, Esq.
829 N. Van Ness Ave.
Fresno, CA 93728

Linda Bacon, Esq.
Fresno County Office of Education
1111 Van Ness Avenue
Fresno, CA 93721-2000

Brian G. Martin, Esq.
DeGoede, Dunne & Martin
1725 N. Fine Avenue
Fresno, CA 93727

      I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on April __/__, 2010 , at Fresno, California.

*/s/ Kathy Torres/*
Kathy Torres, PLS